UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CRIMINAL ACTION NO. 10-78-DCR
CIVIL ACTION NO.  12-07211-DCR

UNITED STATES OF AMERICA,                                                  PLAINTIFF,

V.                          **MAGISTRATE JUDGE'S REPORT
                              AND RECOMMENDATION**

MARVIN DUKES,                                                              DEFENDANT.

## I.  INTRODUCTION

On February 4, 2011, Marvin Dukes pleaded guilty to possession with intent to distribute 500 grams or more of cocaine as well as aiding and abetting, violations of 21 U.S. C.§ 841(a) and 18 U.S.C. § 2. [Record Nos. 11, 33, & 56.] Dukes is now before the Court upon his pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 75.] The United States has filed a motion to dismiss the Defendant's collateral attack. [Record No. 77.] The Defendant has filed a response to the United States' motion to dismiss. [Record No. 81.] Thus, fully briefed, Defendant's motion to vacate, set aside, or correct his sentence [Record No. 75] pursuant to 28 U.S.C. § 2255 is now ripe for review.  Consistent with standard practice in the Eastern District of Kentucky, this matter has been referred to the undersigned for the preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 9, 2010, a federal grand jury indicted the Defendant on 6 charges related to drug trafficking and possession. [Record No. 11.] The Defendant entered into a plea agreement with

the United States in which he agreed to plead guilty to Count 2 of the indictment, [Record Nos. 33 & 54.] aiding and abetting another to knowingly and intentionally possess with intent to distribute five hundred grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, violations of 21 U.S.C. § 841 (a)(1) and 18 U.S.C. § 2 (Count 2). [Record No. 11.] The Defendant's rearraignment took place on February 4, 2011, and the plea agreement was accepted by the Court on June 27, 2011 at his sentencing hearing. [Record Nos. 33 and 53.] Dukes was sentenced to 223 months imprisonment and eight (8) years supervised release. [Record No.56.] Upon motion of the United States, the remaining counts were dismissed. [Id.]

As part of the plea agreement, Dukes stipulated to the following facts:

(a) On October 15, 2010, agents conducted a controlled buy with the Defendant in Cincinnati, Ohio. The Defendant sold approximately 6 grams of heroin to a confidential informant. On October 18, 2010, agents conducted a second controlled buy with the Defendant in Cincinnati, Ohio. Again, the Defendant sold a confidential informant approximately 6 grams of heroin.

(b) On October 22, 2010, the Defendant was arrested when attempting to meet a confidential informant in order to sell that informant heroin. Approximately $1,380 in currency was seized from him at the time of his arrest. A search of the Defendant's vehicle revealed approximately 4 grams of heroin. On October 23, 2010, agents seized two other vehicles that the defendant had been using and found a small amount of suspected heroin in one of the vehicles' ashtray. On October 25, 2010, agents seized proceeds in the amount of $4,323.50 from the Defendant's bank account.

(c) On October 22, 2010, the Defendant's residence was searched pursuant to a consent to search signed by the registered occupant, the Defendant's wife. Agents recovered approximately 169 grams of heroin, 544 grams of powder cocaine, 33 grams of crack cocaine and a digital scale. Agents also found a loaded .357 Colt Python in the Defendant's house. The firearm belonged to the Defendant's wife. Quantities of heroin and crack cocaine were located in the same rooms as the firearm.

(d) The Defendant was convicted of Aggravated Robbery and Robbery in 1993. Trafficking in Cocaine and Trafficking in Heroin in 2004, and Trafficking in Heroin in 2005. The drug trafficking charges from 2004 and 2005 were separated by an

2

intervening arrest.

[Record No. 54¶ 3(a)-(d).]

The plea agreement set forth the maximum possible penalties for Count 2, in light of the Defendant's prior drug conviction, as imprisonment for not less than 10 years and not more than life, a fine of not more than $4,000,000 and a term of supervised release of at least eight (8) years. [Id. ¶ 4.] A special assessment of $100.00 per felony was also specified in the plea agreement.[Id.] In addition, the agreement contained the following non-binding sentencing recommendations:

> (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2010 manual, will determine the Defendant's guideline range.

> (b)Pursuant to U.S.S.G §1B1.3, the Defendant's relevant conduct includes the facts described in Paragraph 4.

> (c) Pursuant to U.S.S.G. § 2D1.l(c)(6), the base offense level would be 28 because the amount of controlled substances when converted to marijuana is between 400 and 700 Kilograms.

> (d) Pursuant to U.S.S.G.§ 2D1.l(b)(1), there is a two level increase for possession of a dangerous weapon.

> (e) The Defendant is a career offender under U.S.S.G. § 4B1.1(a). Pursuant to U.S.S.G. § 4B1.1(b)(A), the offense level for the Defendant will be 37. This offense level would apply since it is greater than the range as otherwise calculated.

> (f) Pursuant to U.S.S.G. § 3El.l and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty. A three-level reduction will result in a guideline range of 262-327 months.

[Id. ¶ 5(a)-(f).]

The parties further stipulated that no agreement existed as to what the Defendant's actual sentence would be. [Id.¶ 5.] The plea agreement contained a waiver whereby the Defendant

3

relinquished his "right to appeal and the right to attack collaterally the guilty plea, conviction, and any lawful sentence." [Id. ¶ 8.] The agreement explicitly stated that this waiver was effective so long as the Defendant did not receive a sentence that is "above the statutory minimum and above the top end of the guideline range as finally adopted by the Court."[Id.] Dukes acknowledged his understanding of the agreement and his voluntary acceptance of all of the terms therein. [Id ¶ 14; Record No. 71, 11-27.]

At sentencing, the Court assigned the Defendant a base offense level of 28. After adding a two-level enhancement for the presence of firearms and an adjustment based on his career offender status, the total offense level resulted in 37. [Record No. 72, at 5.] As agreed upon in the plea, the Defendant received a three-level decrease for his timely acceptance of responsibility, for an adjusted offense level of 34. [Id., 5-6; Record No. 54 ¶ 5.] This resulted in a guideline range of 262 to 327 months incarceration and $17,500.00 to $4 million in fines with at least eight years of supervised release. [Record Nos. 72, at 6 & 54 ¶ 4.]

On June 27, 2011, the Defendant was sentenced well below the guideline range, to 223 months imprisonment followed by an eight-year term of supervised release. [Record No. 56.] Defendant's counsel filed a direct appeal, challenging his sentence, on July 8, 2011. [Record No. 57.] Defendant, on July 21, 2011, filed a separate direct appeal pro se. [Record No. 63.] The Sixth Circuit Court of Appeals subsequently granted Defendant's counsel's motion to withdraw and appointed Defendant new counsel. [Record Nos. 66 & 68.] Soon after, the Court of Appeals dismissed Defendant's pro se appeal as untimely. [Record No. 69.] On March 13, 2012, the Court of Appeals dismissed Dukes' initial appeal upon his own motion to dismiss the claim. [Record No. 74.]

4

On April 20, 2012, the Defendant filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  [Record No. 75.]

In his motion to vacate, the Defendant claims that ineffective assistance of counsel led to the improper imposition of his conviction and sentence because  his attorney failed to advise  the Court of  proper mitigating factors.  [Record No. 75-1, 4-5.] Specifically, the Defendant claims that his counsel was ineffective for the following reasons: (1) failing to investigate or raise to the Court's attention the issue of Defendant's mental incompetency in order to seek mitigation of his conviction or sentence ; and (2) failing to raise proper challenge as to the Defendant's career offender status in order to seek mitigation of his conviction or sentence. [Id.]

The United States answered with a motion to dismiss asserting that the Defendant entered a knowing and voluntary guilty plea waiving his right to collaterally attack his guilty plea, conviction, and sentence. [Record No. 77.]  Defendant responded, maintaining that he did  not enter into the waiver knowingly or voluntarily because he was mentally incompetent to do so. [Record No. 81, 2-3.] Defendant explains that the issue of his mental incompetency was never brought to the Court's attention because of his attorney's ineffective assistance.[Id.]  For the reasons provided below, it will be recommended that Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Record No. 75] be denied and the United States' motion to dismiss [Record No. 77] be granted.

### III.  ANALYSIS

#### A.  Standard of Review

To prevail upon a motion to vacate a sentence under 28 U.S.C. § 2255, a movant must allege that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was

imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. Mallett v. United States, 334 F.3d 491, 496-97 (6th Cir. 2003), cert. denied, 540 U.S. 1133 (2004); see also Moss v. United States, 323 F.3d 445, 454 (6th Cir.), cert. denied, 540 U.S. 879 (2003) A defendant must sustain his allegations by a preponderance of the evidence. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006).

A defendant cannot, however, utilize a § 2255 motion to re-litigate an issue that was raised and considered on appeal, absent highly exceptional circumstances, such as an intervening change in the law. Stephan v. United States, 496 F.2d 527, 528-29 (6th Cir. 1974), cert. denied, 423 U.S. 861 (1975); see also United States v. Prichard, 875 F.2d 789, 790-91 (10th Cir. 1989). Nor may a Defendant use a § 2255 motion as a substitute for bringing a direct appeal. Reed v. Farley, 512 U.S. 339, 354 (1994). A federal prisoner seeking collateral review under § 2255 of an issue not previously raised on direct appeal must first show cause to excuse his failure to do so and actual prejudice resulting from the alleged violation. Id. However, ineffective assistance of counsel claims are not cognizable in a direct appeal because the record is generally inadequate to permit review. Massaro v. United States, 538 U.S. 500, 504-05 (2003); United States v. Combs, 369 F.3d 925, 940 (6th Cir. 2004); United States v. Brown, 332 F.3d 363, 368-69 (6th Cir. 2003). Therefore, such claims are properly reviewed in a § 2255 proceeding. Massaro, 538 U.S. at 504; Combs, 369 F.3d at 940; Brown, 332 F.3d at 369; see also Ciak v. United States, 59 F.3d 296, 303-04 (2nd Cir. 1995) (noting that it is not realistic to expect appellate counsel, who served as the defendant's trial counsel, to raise an ineffective assistance of counsel claim on direct appeal). If the parties have adequately developed the record, the court may elect to review the issue on direct appeal. Massaro, 588 U.S. at 507; United States v. Foreman, 323 F.3d 498, 502 (6th Cir. 2003); accord United States v. Carter,

6

355 F.3d 920,924 (6th Cir. 2004) (sole claim for ineffectiveness - that counsel did not recognize the insufficiency of the evidence- was entirely encompassed within the record and could be reviewed on direct appeal).  Nonetheless, a federal defendant is not required to raise the ineffective assistance claim on direct appeal, even if the record is sufficiently developed to support it. Massaro, 538 U.S. at 504 (ineffective assistance claim is not procedurally defaulted even through it could have been, but was not, raised on direct appeal by federal defendant.)

    B.  Waiver

    A waiver is a "relinquishment or abandonment of a known right." United States v. Olano, 507 U.S. 725, 113 (1993)). Even a constitutional right may be waived, so long as a defendant waived the right by knowingly and voluntarily entering into a plea agreement. United States v. Ashe, 47 F.3d 770, 775-776 (6th Cir. 1995) cert denied, 516 U.S. 859 (1995). A defendant may waive his right to bring a § 2255 motion. A defendant's knowing and voluntary waiver of his rights to pursue collateral relief in a plea agreement will preclude his ability to file a subsequent § 2255 motion. Davila v. United States, 258 F.3d 448, 450 (6th Cir. 2001); Watson v. United States, 165 F.3d 486, 488-489 (6th Cir. 1999). This waiver extends to ineffective assistance of counsel claims in a § 2255 proceeding such as the one at bar. Davila, 258 F.3d at 450-451.

    Thus, before reaching the merits of Defendant's § 2255 motion  [Record No. 75], the Court must first address the argument raised by the United States that Defendant, as part of his plea agreement, waived his statutory right to collaterally attack his guilty plea, conviction, and sentence. [Record No. 77.] The language of Dukes' plea agreement with the United States contains a waiver of his right to collaterally attack his guilty plea, conviction, and sentence. [Record No. 54 ¶ 8.] The United States contends that Defendant knowingly and voluntarily executed this waiver, which

7

effectively forecloses his right to pursue the current motion to vacate. [Record No. 77.] Dukes argues, however, that he was incompetent at the time he entered into the agreement and, accordingly, could not have entered into a waiver knowingly and voluntarily.[Record No. 81, 2- 4.] He further asserts that his incompetence was not brought to the Court's attention because of his attorney's ineffective assistance [Id.]

Specifically, the Defendant contends that he was incompetent to plead guilty because he suffers from Post Traumatic Stress Disorder.[Id.] In his motion to vacate, the Defendant supports this claim by recounting two brief, albeit horrific stories from his childhood during which he witnessed the death of his cousin and where he, himself, was a victim of child rape.[Record No. 75, 21- 22.] Mr. Dukes claims that, due to these events, he received clinical psychiatric therapy along with anti-depressant medications "intermittently."[Id.] The Defendant does not offer any substantive evidence to support the claims of his diagnosis, psychiatric treatment, or medication. He does not mention any psychiatric problems in childhood or adulthood that inhibit his ability to understand or communicate with others.

An accused is competent to enter a guilty plea if he has both, the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational understanding of the proceedings against him." Dusky v. United States, 362 US. 402, 403 (1960) (per curiam); United States v. Ford, 184 F.3d 566, 580 (6th Cir. 1999) cert denied 528 U.S. 1161 (2000).  In order for a defendant to prevail on a challenge to his competency to enter a guilty plea, the record must reflect that the court was presented with sufficient evidence to believe that a psychiatric examination of the defendant was required. The essential inquiry rests on whether a reasonable judge should have experienced doubt with respect to the defendant's competency to enter

a plea. Williams v. Bordenkircher, 696 F.2d 464, 467 (6th Cir.), cert. denied, 461 U.S. 916 (1983);

Pate v. Smith, 637 F.2d 1068 (6th Cir. 1981). The defendant bears the burden of proving that he was

not mentally competent to enter his plea. See Conner v. Wingo, 429 F.2d 630, 639 (6th Cir. 1970),

cert denied. 406 U.S. 921 (1972). To satisfy this burden, the defendant must produce facts that

"positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to his

actual competency during the guilty plea hearing." Carter v. Johnson 131 F.3d 452, 460 (5th Cir.

1997); Sheley v. Singletary, 955 F.2d 1434 (11th Cir. 1992); United States ex. rel. Lewis v. Lane,

822 F.2d 703 (7th Cir. 1987).

      In this case, the record reveals no indication that the trial judge should have doubted the

Defendant's competency. There is no evidence in the record to support a finding that Mr.

Dukes had a problem communicating with his attorney to prepare his defense or that he could

not rationally understand the proceedings against him. Mr Dukes consistently communicated

with the Court logically and clearly. For instance, at the beginning of his rearraignment, the

District Court engaged in a lengthy discussion with the Defendant regarding his mental

disposition:

THE COURT:          All right. Have you ever received any treatment for any type of mental
                    health condition, mental health issues?

DEFENDANT:          Yes, sir.

THE COURT:          Tell me about that.

DEFENDANT:          When I was younger.

THE COURT:          All right. When you were younger. Do you remember what you were
                    treated for?

DEFENDANT:          No.

| | |
|---|---|
| THE COURT: | Can't remember? Do you remember approximately how old you were when you receiving that treatment? |
| DEFENDANT: | I was around nine and then when I was around 16. |
| THE COURT: | All right. Do you remember where you received the treatment? |
| DEFENDANT: | Not when I was nine, but when I was 16 I was in prison. |
| THE COURT: | All right. And do you recall what you were being treated for, what the condition was that you were being treated for at that time. |
| DEFENDANT: | Something like posttraumatic stress.. |
| THE COURT: | All right. Have you ever been treated for hospitalized for addiction to either drugs or alcohol in the past? |
| DEFENDANT: | I went to drug rehab. |
| THE COURT: | Do you remember when that would have happened? |
| DEFENDANT: | 2005. |
| THE COURT: | Was it an inpatient program? |
| DEFENDANT: | Outpatient. |
| THE COURT: | Outpatient. Do you remember where it was located? |
| DEFENDANT: | In Cincinnati on Martin Luther King. |
| THE COURT: | Now, you told me about receiving some mental health treatment while you were incarcerated. Let me ask if you can recall being diagnosed with a specific mental health condition or mental health issue? And you told me about posttraumatic stress syndrome. But other than that, do you recall receiving any diagnosis for any other conditions? |
| DEFENDANT: | I remember them telling me I was bipolar. |
| THE COURT: | Bipolar, all right, Was that when you were 16? |
| DEFENDANT: | Yes. |
| THE COURT: | All right. Now, when you were incarcerated, did you receive any |

additional diagnoses at the time?

DEFENDANT:        No, sir, they had me on medication. I don't remember what it was.

THE COURT:        Now, you've been in custody for several days before this court, so I assume that you are not under the influence of any drugs or alcohol at the present time, but I need to ask you to confirm that; is that correct?

DEFENDANT:        No, sir.

THE COURT:        Do you take any prescription medicines at the present time?

DEFENDANT:        Yes, sir.

THE COURT:        Tell me the kind of medicines that you're currently taking..

DEFENDANT:        I don't know what it is..

THE COURT:        Do you know what it's for?

DEFENDANT:        My migraines.

[Record No. 71, 6-8.]

During this discussion, the Court acknowledged Defendant obviously suffering from a  migraine during the rearraignment proceeding, but Defendant stated unequivocally that this issue did not interfere with his ability to understand the Court proceedings nor was he inhibited by any other medications:

THE COURT:        Are you having migraine headaches at the present time?

DEFENDANT:        Yes, sir.

THE COURT:        Are they so bad that you can't understand what - the questions I'm asking you?

DEFENDANT:        I can understand.

THE COURT:        All right. So they're not so bad that you can't understand me?

DEFENDANT:        Yes, sir.

11

THE COURT:          Do you take medication for anything other than your migraines at the present time?

DEFENDANT:          No, sir.

[Id., at 9.]

The Court further addressed the Defendant's attorney who confirmed that the migraine headaches did not prevent Mr. Dukes from meaningful communication in his defense.[Id., at 10.] Mr. Dukes' attorney also affirmed that she had no reason to believe that the Defendant was impaired such that he could not proceed in the case. [Id.]

Subsequently during the rearraignment, the Court meticulously reviewed the plea agreement with the Defendant, and  Mr. Dukes  repeatedly confirmed his understanding and acceptance of the terms of the agreement. [Record No. 71.] The Defendant indicated that he had carefully reviewed the plea agreement and discussed it with his attorney. [Id., 11-12.] He further agreed that he understood the terms and did not enter into the agreement as a result of force or coercion. [Id., 16-17.] The Defendant also indicated that he understood the minimum and maximum statutory punishments [Id., 17-19], the United States Sentencing Guidelines [Id., 18-19], and agreed that the Guidelines would be used in determining his sentence [Id., at 19]. Dukes specifically discussed the consequences of his plea's waiver to collaterally attack his guilty plea, conviction and sentence with the Court:

THE COURT:          In paragraph seven you agree that you would not file a motion for a decrease in the offense level based on a mitigating role and that you would not file a motion for departure under the Guidelines, under Chapter 5, Parts H and K. And then in paragraph eight, you agree to waive the right to appeal and the right to collaterally attack the guilty plea, conviction, and sentence. However, the waiver of the right to appeal the sentence would not apply if you were to receive a sentence that would be above the statutory minimum that we talked about and also above the top end of the guideline range as finally determined by the Court. And do you

12

|  | understand that you're waiving or giving up those rights under the conditions that I've just described? |
|---|---|
| DEFENDANT: | Yes, sir. |
| THE COURT: | Now, do you understand that when you waive or give up the right to collaterally attack something, that means you're giving up the right to file a separate lawsuit to challenge it or to file what's sometimes referred to as a habeas motion or a habeas petition to challenge it? You do understand that? |
| DEFENDANT: | Yes, sir. |

[Id., 20-21.]

Moreover, the Defendant admitted that the United States could prove the facts as set out in

Paragraph 3 of the Plea Agreement [Record No. 54], agreed that they were true, and adopted

them as his own statement of the facts.  [Record No. 71, 24-26.]

This plea colloquy was the Defendant's opportunity to voice any reservations he had

concerning the representation he was receiving or the terms of the plea agreement.  A proper

plea colloquy, as was conducted by Judge Reeves, serves to cure any such misunderstandings or

problems a defendant may have concerning the implications of a guilty plea.  Ramos v. Rogers,

170 F.3d 560, 565 (6th Cir. 1999).  A defendant's "solemn declaration of guilt carries a

presumption of truthfulness."  Blackledge v. Allison, 431 U.S. 63, 74 (1977). The Court

reasonably declared Mr. Duke's to be fully competent and able to enter a knowing and voluntary

plea of guilty. [Record No. 71, 26-27.]

It is notable that the Court was fully apprised of the terrible events Mr. Dukes specifically

relies upon in his § 2255 motion as the basis for his incompetency. During Defendant's

allocution at his sentencing hearing before Judge Reeves, Mr. Dukes' attorney recounted how

the Defendant had witnessed the death of his nine-year old cousin and how he had been abused

13

mentally, physically and emotionally as a child.. [Record No. 72, 24-26.] This information was presented in regards to § 3553 sentencing factors concerning the nature and characteristics of the Defendant in light of his request for the minimum sentence allowed by statute. The Court considered the horrific events affecting the Defendant's life, imposing a sentence well below the guideline recommendation [Record Nos. 72 at 6 & 54 ¶ 5(f).] and recommending treatment for Dukes' mental health to the Bureau of Prisons during his incarceration.[Record No. 72, at 31.] Again, however, this is no indication that Mr. Dukes ability to understand the Court or to assist his attorney in his defense was in any way impaired. Just as at his rearraignment, Mr. Dukes clearly understood the Court during the sentencing hearing. [Record No. 72.] He even spoke to the Court on his own on his own behalf declaring that he "took full responsibility" for his actions. [Id., at 25.] While the Court was humanely concerned for his emotional health, there was no reason to doubt his competency.

Defendant has not met his burden of proving that he was mentally incompetent to enter into a knowing and voluntary waiver of his right to collaterally attack his guilty plea, conviction, and sentence. Thus, the undersigned finds the terms of the plea agreement, including the waiver, are valid. As a result, any of Defendant's ineffective assistance of counsel claims, to the extent they are offered outside the context of whether he was competent to enter into the plea agreement, are barred. Despite his assertions to the contrary, it is clear that Mr. Dukes executed a valid plea agreement with the United States in which he waived his right to collaterally attack his plea, conviction and sentence. [Record No. 54.] A review of the record clearly demonstrates that the waiver entered into by Dukes was knowing, intelligent and voluntary, and would therefore act as a bar to the current action.

14

## IV. CONCLUSION

Accordingly, and for the reasons provided above, the undersigned hereby recommends that the Defendant's motion to vacate, set aside, or correct his sentence [Record No.75 ] filed pursuant to 28 U.S.C. § 2255 be denied, that the United States' motion to dismiss [Record No. 77] be granted, and that this action be dismissed with prejudice and stricken from the docket.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Ann, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed August 30, 2012.



Signed By:
_Edward B. Atkins_
United States Magistrate Judge

Date of Entry and Service:

15